# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

MAE WILLIAMS
                Plaintiff,

vs.                                             CASE NO: 2:08-cv-477-UA-SPC

MICHAEL J. ASTRUE,
Commissioner of Social Security,
                Defendant.
_____

## REPORT AND RECOMMENDATION[1]

This matter comes before the Court on the Plaintiff, Mae Williams' Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on June 11, 2008. The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #11) on November 24, 2008. The Commissioner filed a Memorandum of Law in Support of the Commissioner's Decision (Doc. #24) on December 23, 2008. Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## FACTS

### *Procedural History*

The Plaintiff filed an application for disability and disability insurance benefits on January 15,

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

1

2004. (Tr. 37). The Plaintiff alleges an onset disability date of February 5, 2001. (Tr. 37). The Plaintiff's claims were denied initially on April 27, 2004, and upon reconsideration on March 18, 2005. (Tr. 37). The Plaintiff filed a timely request for hearing on May 13, 2005. (Tr. 37). On September 20, 2005, the Plaintiff appeared in Fort Myers, Florida, for a hearing held by video-conference before the Honorable Ann Azdell, Administrative Law Judge. (Tr. 37, 333-351). On December 20, 2005, the ALJ issued an unfavorable decision. (Tr. 37-52). The Plaintiff timely filed a Request for Reconsideration by the Appeal Council. (Tr. 32). The Appeals Council denied the Plaintiff's Request for Review on April 16, 2008. (Tr. 4-6). Therefore, the decision of the Commissioner became final. Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court.

*Plaintiff's History*

The Plaintiff was born on March 12, 1958. (Tr. 96). The Plaintiff was forty-nine (49) years of age at the time of the hearing. (Tr. 333). The Plaintiff alleges an onset disability date of February 5, 2001, due to degenerative disc disease of the lumbar spine, osteoarthritis of the knees (status post bilateral arthroplasites), obesity, hypertension, diabetes mellitus, bursitis of the left hip and shoulder, a history of recent appendectomy, and peripheral neuropathy in the lower extremities. (Tr. 39). The Plaintiff has an eighth (8th) grade education, did not get her GED, and did not take any specialized vocational courses. (Tr. 335). The Plaintiff has a past relevant work history of a housekeeper/cleaner. (Tr. 50).

*Administrative Law Judge's Decision*

Upon consideration of the evidence of record, the ALJ found the Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2006. (Tr. 39). The ALJ

determined the Plaintiff did not engage in substantial gainful activity since February 5, 2001, the alleged onset disability date. (Tr. 39). The Plaintiff was found to have the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis of the knees (status post bilateral arthroplasties), obesity, hypertension, diabetes mellitus, bursitis of the left hip and left shoulder, a history of recent appendectomy, and peripheral neuropathy in the lower extremties. (Tr. 39). However, the Plaintiff does the not have an impairment or combination of impairments that meets or medically equals on of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). (Tr. 46). The ALJ concluded based upon the medical evidence the Plaintiff has the residual functional capacity (RFC) to perform a limited range of sedentary work. (Tr. 47). The Plaintiff has the ability to lift/carry/push/pull ten (10) pounds frequently. The Plaintiff has the ability to sit for six (6) hours for a total of eight (8) hours a day, and stand and/or walk for two (2) hours for a total of eight (8) hours a day. (Tr. 47). The Plaintiff can occasionally climb, stairs, ramps, balance, and stoop. (Tr. 47). The Plaintiff should not work in an environment with exposure to moving and dangerous machinery, unprotective heights, and vibrations. (Tr. 47). Based upon the Plaintiff's RFC, she was unable to perform her past relevant work. (Tr. 50). The Plaintiff was born on March 12, 1958, and was forty-two (42) years old, which is defined as a younger individual, age 18-44, on the alleged onset disability date. (Tr. 50). The ALJ noted the Plaintiff has a limited education and is able to communicate in English. (Tr. 50). The ALJ also found the Plaintiff does not have transferability of job skill within her RFC. (Tr. 51). The ALJ considered the Plaintiffs, age, education, work experience, and residual functional capacity, and determined that jobs exist in significant numbers in the national economy that the Plaintiff can perform. (Tr. 51). Therefore, the ALJ concluded the Plaintiff was not under a "disability" as defined in the Social

Security Act, from February 5, 2001, through her date last insured of December 31, 2006. (Tr. 52).

## **THE STANDARD OF REVIEW**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Commissioner, WL 4365647 *2 (M.D. Fla. December 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[2]. 20 C.F.R. §§ 404.1520(a), 404.920(a). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, WL 4365647 *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982));

---

[2]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
  *Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
  *Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
  *Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
  *Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
  *Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n. 8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n. 8; Dyer v. Barnhart, 357 F. 3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## **DISCUSSION**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

The Plaintiff asserts the ALJ's decision should be reversed because the decision contains numerous errors of law and the findings are not supported by substantial evidence. Specifically, the Plaintiff argues: (1) The finding that the Plaintiff can perform the jobs identified by the ALJ is not supported by substantial evidence because the job requirements found within the Dictionary of Occupational Titles are inconsistent with the ALJ's RFC; (2) The ALJ's RFC fails to consider Claimant's illiteracy and therefore, the ALJ erred as a matter of law and the decision is not based on substantial evidence; (3)The ALJ's failure to apply SSR 02-1p regarding Plaintiff's obesity is an error of law; (4) The Plaintiff was prejudiced by the ALJ's bias against her attorney and biased against her treating physicians, therefore, upon remand, a new ALJ should be assigned to hear this claim; (5)The ALJ failed to include all of the Plaintiff's limitations within her hypotheticals to the vocational expert which is an error or law; and (6) The ALJ's failure to apply the standards set forth in 20 CFR § 404.1520a is an error of law. The Commissioner argues substantial evidence supports the Commissioner's decision that Plaintiff could perform the jobs the Vocational Expert identified and that the Plaintiff was not disabled.

*1. Whether the Plaintiff Can Perform the Jobs as Identified by the ALJ or Whether the Jobs Listed in the Dictionary of Occupational Titles are Inconsistent with the ALJ's RFC?*

The VE testified that given all of these factors presented by the ALJ in her hypothetical, the Plaintiff would be able to perform the requirements of representative occupations such as a bench

assembler (DOT 706.687-010)[3], as a hand packager (DOT 920.587.018)[4], and as an information clerk (DOT 237.367-022)[5]. (Tr. 349). The ALJ went so far as to indicate that if she limited the individual's educational level to marginal, rather than limited, would that interfere with the performance of any of those jobs? The VE responded, "[n]ot in my opinion." (Tr. 349).

As a result, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules." (Tr. 52). However, according to data from the Dictionary of Occupational Titles (DOT) those positions conflict with the ALJ's RFC. Therefore, the Plaintiff argues where there is such a conflict, SSR 00-4p requires the ALJ to resolve the conflict and this was not done.

Social Security Ruling (SSR) 00-4p states in pertinent part, "When there is an apparent unresolved conflict between VE...evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p. At the hearing level, the adjudicator has a duty to "fully develop the record" by inquiring, "on the record, as to whether or not there is such inconsistency." SSR 00-4p.

---

[3]In the Fort Myers metropolitan statistical area, we would have less than 100 such jobs, statewide, approximately 2,000, and nationally, 62,000.

[4]Locally in Fort Myers, less than 100 such jobs, statewide, approximately 400, and nationally, 14, 000.

[5]Locally in Fort Myers, approximately 200 jobs, statewide, 6,000, and nationwide, approximately 100,000.

There are two obligations of the ALJ under SSR 00-4p. First, "[w]hen a VE ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE ... evidence and information provided in the DOT." Garskof v. Astrue, WL 4405050 * 4 -5 (M.D. Fla. September 26, 2008). Simply stated, under the first requirement of SSR 00-4p, the ALJ must ask if there is a conflict. Id. The second requirement under SSR 00-4p provides that "when there is an apparent unresolved conflict between VE ... evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE ... evidence to support a determination or decision about whether the claimant is disabled." Id. Thus, where the ALJ learns of a conflict he is required to discuss and resolve the conflict. Id.

With regard to the first requirement, the ALJ specifically instructed the VE, Mr. Carlisle, during hearing "I also ask if at any time the information you give... differs from the information in the Dictionary of Occupational Titles, that you will alert us and provide an explanation." The VE indicated, "I will." (Tr. 347). This is all that is required under the first step of SSR 00-4p. Id.

The Plaintiff argues that the ALJ failed to investigate the discrepancies between the RFC assessment and the DOT job titles the VE said the Plaintiff could work. The VE said the Plaintiff could work three jobs with an RFC assessment of sedentary work with impeded limitations. (Tr. 51). The VE said the Plaintiff could be a bench assembler DOT# 706.687-010, hand packager DOT# 920.587-018, and/or information clerk DOT# 237.367-022. The Plaintiff argues that the DOT lists the jobs of bench assembler and hand packager as more than sedentary occupations and therefore, the ALJ failed to investigate the difference between the VE's assessment and the DOT which rates bench assembler and hand packager as higher lever work.

8

The Plaintiff's legal argument focuses on the second requirement-i.e. the requirement to resolve any conflicts between the testimony of the VE and the DOT. Although there was no mention at the hearing of an inconsistency-nor was there any testimony from the VE that there was an inconsistency-Plaintiff has now gone back and compared the VE's testimony to the technical requirements of the DOT and points out that there is an inconsistency with regard to the limitation on reaching. During the hearing, the VE testified that there are three (3) jobs that Plaintiff could perform, two of which require more than limited sedentary work. A bencher assembler requires some crouching, which the ALJ found the Plaintiff could not perform. Hand Packager requires a medium level of exertion which greatly exceeds the Plaintiff's limited sedentary exertion level of work. The position of information clerk meets the requirements of the Plaintiff's RFC. The Plaintiff contends that because the ALJ did not address the inconsistencies between the VE's testimony and the DOT descriptions regarding the hand packager and the bench assembler jobs and the ALJ's RFC of limited sedentary work , the case should be reversed and remanded pursuant to SSR 00-4p.

The problem with Plaintiff's argument is that Plaintiff incorrectly assumes SSR 00-4p is violated simply where an inconsistency may exist. *See* Id. at *5. This interpretation is generally at odds with the law in the Eleventh Circuit-predating SSR 00-4p-concerning the binding effect of the testimony of a VE when there is a conflict. Id. Secondly, Plaintiff's interpretation of SSR 00-4p is at odds with cases interpreting SSR 00-4p, which only require the ALJ to resolve the conflict when he is made aware of an inconsistency. Id. In the instant case, the ALJ specifically points out "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 51). Thus, the ALJ did not violate SSR00-4p because no inconsistencies were pointed out during the hearing.

## *2. Whether the ALJ Failed to Consider the Plaintiff's Literacy?*

The Plaintiff argues the ALJ erred as a matter of law by failing to consider her illiteracy in the finding that she can perform other work. (Doc. # 22, p. 6-9). The Plaintiff argues she has an eighth (8th) grade education and while in school attended special education classes. (Doc. # 22, p. 6). The requires assistance from her husband and daughters with reading and writing because her skills in this area "are not ok". (Doc. # 22, p. 6). During the hearing, the Plaintiff testified that she has difficulty reading the mail from her attorney and the Social Security Administration (Tr. 342).

The Plaintiff bears the burden of proof to establish her disability and is responsible for furnishing or identifying medical and other evidence regarding her impairments. Rivera v. Astrue, 2008 4456750 * 2 (M.D. Fla. September 30, 2008) (citing Bowen v. Yucket, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1991)). The ALJ specifically found that "although testimony was elicited by the claimant's attorney to suggest that the claimant is illiterate, no such finding may be made." (Tr. 50). There has never been any allegation by the claimant that her level of education was less than limited to the grade level she attained." (Tr. 50). Further, the record, including the prior file, contains numerous examples of the claimant's ability to read and write." (Tr. 50). She has written multiple letters in support of her claim and these have been made a part of the evidentiary record." (Tr. 50-51). The ALJ felt so strongly about this allegation that she cautioned counsel, as a member of the Florida Bar and an officer of the court, regarding the making of unsupported allegations regarding material issues. (Tr. 51). Thus, the ALJ addressed the Plaintiff's illiteracy claim and properly discounted it, because the Plaintiff failed to provide support for her claim, and the record demonstrated that she was not illiterate.

### *3. Whether the ALJ's failure to apply SSR 02-1p Regarding Plaintiff's Obesity is an Error of Law?*

The ALJ specifically finds that "the claimant has the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis of the knees (status post bilateral arthroplasties), **obesity**, hypertension, diabetes mellitus, bursitis of the left hip and left shoulder, a history of a recent appendectomy, and peripheral neuropathy in the lower extremities." (Tr. 39) (emphasis added). The Plaintiff's brief contains arguments that obesity "could increase Plaintiff's blood pressure and contribute to negative factors produced by diabetes", "could contribute to the severity of Plaintiff's chest pains and possibly lead to a cardiac condition", "could cause increased pain to Plaintiff's arthritis and ankles", "shoulder pain and muscle spasms could be more pronounced" and that she "may have problems with the ability to sustain a function over time." The Plaintiff concluded, therefore, "Due to Plaintiff's obesity, she may have problems with the ability to sustain a function over time." (Doc. # 22, p. 11-12).

The ALJ is not tasked with adjudicating the Plaintiff's functional capacity at some future point, but, in this case from her onset disability date of February 5, 2001, through her date last insured of December 31, 2006. As noted in her report, the ALJ found that treatment records referred to Plaintiff's ability to ambulate easily or without difficulty, as late as 2007 her diabetes was diet-controlled, she testified at her hearing that she did not take any medications for her diabetes, and her blood pressures taken in 2007 were not significantly elevated. (Tr. 40-50).

Although the Plaintiff's obesity "could" cause her conditions to worsen in the future, the ALJ properly weighed the evidence regarding her present condition and substantial evidence supports the ALJ's finding that she was not disabled due to her obesity from her onset disability date of February

11

5, 2001, through her date last insured of December 31, 2006.

### *4. Was the ALJ Biased Against the Plaintiff's Attorney and Treating Physicians?*

The Plaintiff argues that the ALJ's admonition of the Plaintiff's attorney demonstrates the ALJ's bias and resulted in the Plaintiff receiving prejudicial treatment. Further, the Plaintiff argues the ALJ's rejection of the Plaintiff's treating physicians' findings is prejudicial to Plaintiff and demonstrates bias. Therefore, the Plaintiff argues that upon remand, a new ALJ should be assigned to hear the claim.

An ALJ shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision. 20 C.F.R. § 404.940. The ALJ's impartiality is necessary to maintain the integrity of the system. Jordan v. Astrue, 2008 WL 3200237 *6 (M.D. Fla. August 6,2008) (citing Miles v. Chater, 84 F.3d 1397, 1401 (11th Cir.1996)). Therefore, the ALJ must carefully weigh the evidence, giving individualized consideration to each claim that comes before him. Id. However, there is a presumption that judicial and quasi-judicial officers are unbiased. Jordan, 2008 WL 3200237 at *6 (citing Schweiker v. McClure, 456 U.S. 188, 195, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982)). The burden of rebutting this presumption is on the party alleging the bias by showing a conflict of interest or some other specific reason for disqualification. Id. at 195-196. In the instant case, Plaintiff has failed to satisfy this burden.

### *Bias Against the Plaintiff's Attorney*

The Plaintiff, when asked during her hearing whether she could read and write okay stated, "No." When asked if she could read the email from her attorney's office or the paperwork for Social Security, she stated, "Not really." As previously stated, the ALJ concluded that no such finding of

illiteracy can be made. (Tr. 50). The ALJ stated that "the record, including the prior file, contains numerous examples of the claimant's ability to read and write. She has written multiple letters in support of her claim and these have been made a part of the evidentiary record." (Tr. 50-51). Because the ALJ felt so strongly about this allegation, in her written opinion, she cautioned counsel, as a member of the Florida Bar and an officer of the court, regarding the making of unsupported allegations regarding material issues. (Tr. 51). Although Plaintiff argues that intimidation by an ALJ at a hearing is likely designed to chill the ability of counsel to vigorously argue and develop evidence in support of the Plaintiff's case, the ALJ did not rebuke counsel during the course of the hearing but merely allowed the testimony to come forward as elicited by the attorney. The ALJ made mention of counsel's conduct as part of her findings on the record. (Tr. 51). It is clear that the claim of illiteracy is contrary to the record and the Plaintiff's own detailed written responses on various forms, therefore, the ALJ was correct in making her conclusion based upon the evidence in the record. Since the ALJ did not rebuke the Plaintiff's Counsel at the hearing, no prejudice prevented the Plaintiff's Counsel from arguing vigorously before the ALJ.

*Bias Against the Plaintiff's Treating Physicians*

Regarding whether the ALJ was biased against the Plaintiff's treating physicians, the Plaintiff argues that the ALJ's rejection of all of Plaintiff's treating physicians' findings is prejudicial to Plaintiff and demonstrates bias. The ALJ clearly reviewed all of the treating and examining physicians' opinions and medical records and properly applied the treating physician standard to those opinions.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at

13

1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580, (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at 1334.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e).

In making her findings, the ALJ considered but gave little weight to the opinion dated August 23, 2006, by Dr. Springer, an orthopedic surgeon and treating physician. The ALJ found:

> Dr. Springer opined that the claimant was disabled from performing her profession at least since June 21, 2002. The undersigned notes that this opinion is a finding of fact reserved to the Commissioner (Social Security Ruling 96-6p). Dr. Springer also opined that the claimant was limited in her weight bearing ability to less than two hours a day. The undersigned notes that Dr. Springer's progress notes did not reflect these limitations. Dr. Springer's progress notes reflect that the claimant had progressed well after her surgeries. This was shown on May 10, 2004, during a follow-up evaluation, with Dr. Springer when he reported that the claimant was doing very well and that while she did report some minor aching discomfort the claimant had reported that overall she was very pleased with the outcome of the surgery. In addition, Dr. Springer cleared the claimant for full activity on this day and instructed herto follow-up in one year. (Tr. 49).

Therefore, the ALJ found that "Dr. Springer's opinion is not supported by his findings during clinical examinations or by the balance of the evidence." The ALJ particularly articulated that throughout the time period in question, the Plaintiff's own treating primary physician noted that she ambulated well. (Tr. 49).

15

The ALJ gave little weight to Dr. Troust's opinion, because it was not supported by her findings during clinical examination. The ALJ points out:

> This was shown on December 15, 2004, February 4, 2005, October 6, 2005, May 19, 2006, and April 4, 2007, when Dr. Troust reported that the claimant ambulated easily into the room. In addition, during these evaluations the claimant was noted to demonstrate full range of motion in her extremities and there was no evidence of edema. (Tr. 50).

The ALJ found the opinions of Dr. Troust were contrary to her findings during clinical examination, and articulated sufficient findings to give Dr. Trouts's opinion little weight.

The ALJ considered the opinion dated February 15, 2005, of Dr. Theiss, a one time examining physician. On that date, Dr. Theiss gave an opinion that Plaintiff had severe low back pain and moderate to severe knee pain. He reported that seating range of motion was a painful ordeal for the Plaintiff, and that she would not be able to sit beyond one to two minutes without changing positions. Dr. Theiss further stated that Plaintiff would have a major challenge to function without pain relief. (Tr. 50).

The ALJ noted that Dr. Theiss is a one time examining physician, and therefore, did not have a treating relationship with the Plaintiff. (Tr. 50). Additionally, it appears that Dr. Theiss did not have access to any of the Plainitff's medical records and that his opinion was based solely on the Plaintiff's subjective complaints of pain. (Tr. 50) The ALJ specifically points out the primary physicians' treatment notes just days before Dr. Theiss' examination and continuing regularly thereafter, make no mention of the extreme limitations alleged to this consultative examiner. (Tr. 50). The ALJ articulated sufficient evidence in the record to give little weight to Dr. Theiss' opinion in light of his findings during clinical examination as not consistent with the medical evidence of record as a whole.

16

Therefore, the ALJ's rejection of the medical opinions in this case, even the treating physician's opinion, did not show bias. The ALJ properly addressed the opinions of Drs. Springer, Troust and Theiss in accordance with the regulations and case law. The Plaintiff's assertion of bias regarding her attorney and her treating physicians has no merit and the decision should not be disturbed.

*5. Whether the ALJ Failed to Include All of Plaintiff's Limitations Within Her Hypotheticals to the VE?*

The Plaintiff argues the ALJ failed to determine how the Plaintiff's severe left shoulder and severe left hip impairments had an effect on basic unskilled work. Essentially, the Plaintiff argues that no limitations were included in any of the hypotheticals to the VE addressing the effect on work of the Plaintiff's severe left shoulder and left hip impairment. (Plaintiff's Brief p. 17).

Hypothetical questions asked by the ALJ to the vocational expert must describe comprehensively the claimant's impairments. Loveless vs. Massanari, 136 F.Supp.2d 1245, 1250 (M.D. Ala. 2001) (citing Pendley v. Heckler, 767 F.2d 1561, 1652 (11th Cir. 1985) (*per curiam*)). If the hypothetical question upon which the vocational expert bases his evaluation does not assume all of a claimant's impairments, the decision of the ALJ denying a claimant's applications for disability insurance benefits, which is based significantly on the expert testimony, is not supported by substantial evidence. Loveless, 136 F.Supp.2d at 1250. Notwithstanding, the foregoing general standard, the hypothetical question posed by the ALJ may omit non-severe impairments. Id. The ALJ asked the VE:

> Please assume for each that we have an individual who's age 43 to 49 with a limited education and this past relevant work experience that you've identified. In accordance with the state agency assessments at 3 and 6F, would be limited to lifting, carrying, pushing, pulling 20 pounds on occasion,

17

> 10 pounds frequently, sitting for six hours, standing and walking for two to three in an eight-hour day. Individual could occasionally climb, balance, stoop, crouch, kneel, crawl, but should never be exposed to vibration, dangerous moving machinery or unprotected heights. Now, with the residual functional capacity, could one perform either one of these jobs that you identified? (Tr. 348).

The VE clarified the amount of time, ability to stand and walk would be two to three hours out of an eight-hour day, and then indicated the Plaintiff would not be able to perform her past relevant work. (Tr. 348).

Finding the Plaintiff unable to perform her past relevant work, the ALJ asked a second hypothetical question:

> Now, I'd like you to assume that lifting, carrying, pushing, and pulling is limited to 10 pounds on occasion, five pounds frequently, individual could sit for six hours, stand and walk for two in an eight-hour day, individual should never climb ladders, scaffolding or rope, could occasionally climb short flights of stairs and ramps, occasionally balance and stoop, but never crouch, kneel or crawl, again, no exposure to dangerous moving machinery, unprotected heights or vibration. Now, within that residual functional capacity, could you identify for me sedentary, unskilled jobs? (Tr. 348-349).

When using a VE, the ALJ must pose hypothetical questions to the VE to determine whether someone with the same limitations as the claimant will be able to secure employment in the national economy. Humphries v. Barnhart, 183 Fed. Appx. 887, 891 (11th Cir. 2006) (citing Phillips v. Barnhart, 357 F. 3d 1232, 1239 (11th Cir. 2004). That hypothetical question must include "all of the claimant's impairments." Humphries, 183 Fed. Appx. at 891 (citing Wilson v Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)); Jones v. Apfel, 190 F. 3d 1224, 1229 (11th Cir. 1999) *cert. denied*, 529 U.S., 120 S. Ct. 1723, 146 L. Ed. 2d 664 (2000).

In the instant case, the ALJ accommodated the Plaintiff's left shoulder and left hip

impairments by limiting her lifting, standing and walking, as well as the other limitations on climbing, balancing, stooping, crouching, kneeling, crawling, and work in an environment with exposure to moving and dangerous machinery, unprotected heights, and vibrations (Tr. 47). The Plaintiff has not identified any additional limitations not taken into account by the ALJ during her analysis. Therefore, the Plaintiff's argument lacks merit.

### 6. *Whether the ALJ Erred in Evaluating the Plaintiff Regarding Depression*

The Plaintiff contends the ALJ's decision erroneously reported that Plaintiff was never diagnosed with depression. (Plaintiff's Brief p. 18). The Plaintiff further argues that once a diagnosis is made, the ALJ has a duty to apply 20 CFR 404.1520a and discuss the factors contained in the PRTF form, complete a Mental RCF, as well as determine severity.

The ALJ examines the Plaintiff's allegations of depression as follows:

> While the record makes reference that the claimant suffers from depression, the medical evidence of record does not reflect that the claimant has been diagnosed with a mental impairment or that she mentioned any symptoms related to her mental abilities during any of her appointments with her treating or examining physicians. Absent objective medical evidence, the claimant's symptoms alone cannot establish the existence of a medically determinable mental impairment. An impairment must result from anatomical, physiological, or phsychological abnormallities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Accordingly, the objective medical evidence contained in the record does not establish the existence of a medically determinable mental impairment that could reasonably be expected to produce the claimant's symptoms. (Tr. 45-46).

Although the ALJ points out that Plaintiff testified she has a depressed mood and cannot concentrate:

> the medical evidence does not reflect that the claimant requested, required or was referred for any mental health treatment. While the September 7, 2007[,] report from her primary care physician referred to limitations brought on by a mental impairment, this physician's detailed treatment notes never referred

19

to any mental symptoms, diagnoses or limitations, and, rather, repeatedly mentioned that the claimant's mood and demeanor were normal. In addition, there is no evidence to suggest that the claimant was prescribed any psychotropic medications or referred to any mental health specialists. (Tr. 49).

Therefore, after considering the evidence of record, the ALJ found that Plaintiff has no medically determinable mental impairment. (Tr. 49). The ALJ pointed to substantial evidence in the record to make that determination, and therefore, her decision should not be disturbed.

It is respectfully recommended that the decision of the Commissioner is supported by substantial evidence and should be affirmed. Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The final decision of the Commissioner should be **AFFIRMED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** at Fort Myers, Florida, this __8th__ day of June, 2009.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: Counsel of record